**SIGNED THIS: February 11, 2016**

_____
**Thomas L. Perkins**
**United States Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TIMOTHY H. THORPE, | ) | Case No.  13-81262 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| JEANA K. REINBOLD, as Chapter 7 Trustee | ) | |
| of the Estate of Timothy H. Thorpe, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No.  14-8072 |
| | ) | |
| BELVA J. THORPE, | ) | |
| | ) | |
| Defendant. | ) | |

**O P I N I O N**

This matter is before the Court on cross motions for summary judgment.  The

Plaintiff is the Chapter 7 Trustee (TRUSTEE) of the bankruptcy estate of the Debtor,

Timothy H. Thorpe (DEBTOR).  The Defendant, Belva J. Thorpe (BELVA), is the DEBTOR'S

ex-wife.  In her adversary complaint, the TRUSTEE seeks to avoid an alleged transfer to

BELVA, effected when the divorce petition was filed, of the DEBTOR'S interest in the real estate that was the marital homestead. The TRUSTEE, in her complaint, also seeks authority to sell the homestead under section 363(h) of the Bankruptcy Code.

## FACTUAL and PROCEDURAL BACKGROUND

The material facts are undisputed. Following their marriage in 1986, BELVA and the DEBTOR purchased real estate commonly known as 1104 - 15th Street, Silvas, Illinois. They took title by Corporation Warranty Deed dated July 22, 1987, identifying the grantees as "Timothy H. Thorpe and Belva J. Thorpe, husband and wife, as joint tenants and not as tenants in common." The deed was recorded on July 23, 1987, in the Rock Island County Recorder's office. They occupied the real estate as their marital home until the DEBTOR moved out at some point between the filing of the divorce action on October 4, 2012 and early December, 2012. BELVA has continuously resided in the residence as her home.

The DEBTOR filed his petition for protection under Chapter 7 of the Bankruptcy Code on June 21, 2013. On July 16, 2013, the divorce court conducted an evidentiary hearing on the issues of grounds for dissolution, dissipation of certain assets by the DEBTOR, as well as the division of debts and marital property. On July 31, 2013, the judge set forth his findings in a written opinion determining that grounds for dissolution were established. The opinion states that the DEBTOR dissipated $98,000 in marital assets by liquidating two 401(k) accounts under his control, that the parties agreed that the marital residence, valued at $125,000, would be awarded to BELVA, and that the DEBTOR'S equity interest in the residence would be "offset" by the $98,000 in marital assets that he dissipated. The opinion further provides that BELVA is awarded the marital residence

"free and clear of any claim of the respondent (DEBTOR)." The award to BELVA of the residence, with no corresponding obligation to pay any portion of its equity value to the DEBTOR, served to provide BELVA with the value of the marital assets that she would have received had the DEBTOR not dissipated his 401(k) accounts. Finally, the opinion directed BELVA'S attorney to prepare a judgment reflecting the findings of the opinion.

That judgment was not entered until two years later. In the interim, the DEBTOR'S case was converted on his motion to one under Chapter 13, only to be later converted back to Chapter 7. Eventually, by order entered April 14, 2015, this Court modified the automatic stay to permit the parties to return to the divorce court to obtain the judgment that would, among other things, finally determine BELVA'S claims against the marital property, including the residence, subject to resolution of the TRUSTEE'S claims against those assets to be thereafter determined by the Bankruptcy Court.

On June 2, 2015, the state court held another hearing and entered a Judgment for Dissolution of Marriage consistent with its 2013 opinion awarding the marital residence to BELVA "free and clear from any claims" of the DEBTOR, as a result of the DEBTOR'S dissipation of assets, subject to determination of the TRUSTEE'S rights by the Bankruptcy Court.

Count I of the TRUSTEE'S Complaint, asserting the strong-arm powers granted to trustees under section 544(a) of the Bankruptcy Code, seeks to avoid the transfer to BELVA of the DEBTOR'S one-half interest in the marital residence that is alleged to have occurred upon commencement of the divorce proceeding by operation of 750 ILCS 5/503(e). The

TRUSTEE also alleges that BELVA lost the opportunity to protect her contingent interest in the DEBTOR'S interest in the marital residence because she failed to record a *lis pendens* notice after the divorce action was filed.

## ANALYSIS

### A. The Effect of Divorce on Property of the Estate.

It is significant that the divorce proceeding preceded the DEBTOR'S bankruptcy filing. The question of whether a debtor's interest in property is property of the bankruptcy estate is a federal question to be decided as a matter of federal law. *In re Marrs-Winn Co., Inc.,* 103 F.3d 584, 591 (7th Cir. 1996). Absent a countervailing federal interest, the nature and extent of a debtor's property interests are determined by state law. *Butner v. U.S.,* 440 U.S. 48, 54-55, 99 S.Ct. 914 (1979). A trustee takes no greater rights than the debtor held on the petition date. Section 541 does not expand the debtor's rights against others more than they exist at the commencement of the case. *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1213 (7th Cir. 1984).

To the extent a property interest is subject to a contingency existing on the petition date, the property interest is equally limited as property of the estate. *Matter of Sanders,* 969 F.2d 591, 593 7th Cir. 1992). If a contingency is subsequently determined under state law to divest the debtor of the property interest, the estate's interest is also subject to divestment. *In re Greer,* 242 B.R. 389, 397 (Bankr.N.D.Ohio 1999); *In re Coffey,* 348 B.R. 775 (Bankr.E.D.Tenn. 2006); *In re Brown,* 168 B.R. 331 (Bankr.N.D.Ill. 1994). This principle has been recognized as especially important when a bankruptcy case is filed while a divorce proceeding and equitable property division are pending, so that bankruptcy is not used to

preempt what the debtor-spouse perceives may be an unfavorable property division. *See In re White,* 851 F.2d 170, 174 (6th Cir. 1988)(affirming a grant of stay relief to allow divorce court to proceed with property division, expressing concern that bankruptcy "could otherwise be used as a weapon in a marital dispute"); *In re Roberge,* 188 B.R. 366, 370-71 (E.D.Va. 1995)(noting bankruptcy policy of protecting families and preserving the marital residence, and the "federal interest" in not having bankruptcy used as a weapon in divorce proceedings).

The principle cuts both ways. When a divorce proceeding is commenced before bankruptcy and where state law provides that a spouse's right to seek equitable distribution arises at the beginning of the divorce proceeding, the debtor's contingent interests in marital property are property of her bankruptcy estate.[1] *Brown v. Brown,* 2013 WL 2338233 (E.D.Ky.); *In re Radinick,* 419 B.R. 291 (Bankr.W.D.Pa.); *In re Fritch,* 2011 WL 2181661 (Bankr.S.D.Ind.). Whatever assets the debtor is ultimately awarded on account of that interest become property of the estate.

Under Illinois law, a divorce court is responsible for determining what property is or is not "marital property" and, once that categorization is made, "shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors." 750 ILCS 5/503(d). When a divorce case is filed, the property owned by either spouse that fits within the definition of "marital property" in section 503 of the IMDMA, becomes subject to the equitable property division that the divorce court is required to adjudicate once the marriage is dissolved. That contingency arises with respect to all assets that become marital property, both jointly owned assets and individually owned assets.

---

[1]Where the divorce petition is filed after the bankruptcy petition, whether marital property owned by the non-filing spouse, and awarded by the divorce court to the debtor-spouse, becomes property of the bankruptcy estate is determined by application of section 541(a)(5)(B).

Other bankruptcy courts applying Illinois law recognize that where a divorce petition is filed before bankruptcy, and marital property has not yet been divided, the bankruptcy estate holds only the debtor-spouse's contingent interest in marital assets. *In re Zachmann*, 2013 WL 1316647 (Bankr.N.D.Ill. 2013); *In re Dzielak*, 435 B.R. 538, 547 (Bankr.N.D.Ill. 2010).[2] The contingency is determined by the divorce court, as a matter of state law, when it divides the marital property. What had been an interest subject to a contingency ripens into a full ownership interest. Assets awarded to the debtor-spouse are property of the estate, while assets awarded to the non-debtor-spouse are not property of the estate. *Zachmann* (citing *In re Skorich*, 482 F.3d 21 (1st Cir. 2007)).

The divorce court is the appropriate forum to equitably allocate marital property. Thus, bankruptcy courts are correct to modify the automatic stay for that purpose, even though property of the estate may be involved. *White*, 851 F.2d at 173; *Roberge v. Buis*, 95 F.3d 42 (4th Cir. 1996). Until the state court equitably divides the marital property, what is property of the bankruptcy estate is unclear. *In re Hohenberg*, 143 B.R. 480, 485 (Bankr.W.D.Tenn. 1992). When equitably dividing marital property, Illinois courts protect the rights of creditors who obtain lien rights against such property prior to the time the dissolution proceeding is commenced. *FirstMerit Bank, N.A. v. McEnery*, 2014 IL App (3d) 130231-U (where a creditor obtained a charging order against husband's interests in LLCs prior to divorce proceeding where wife claimed half interest as her share of marital property, trial court correctly found that wife's marital interest in LLCs was subordinate

---

[2]*Cf. Farrey v. Sanderfoot*, 500 U.S. 291, 299-300, 111 S.Ct. 1825 (1991)(under Wisconsin law, a divorce decree may extinguish the couple's pre-existing interests in marital property and replace them with entirely new interests or at least reorder those interests).

to creditor's preexisting lien).  Where the divorce proceeding is commenced before any such lien rights are obtained by a creditor, it is this Court's view that Illinois courts have the authority to accord primacy to the spouse's marital property interest, except as to assets that were already encumbered, pre-divorce, by a mortgage, security interest or other contractual claim.  *See Kujawinski,* 71 Ill.2d at 574 (marital property to be divided "so as to avoid the impairment of any contractual obligations owed to third parties").

Since the divorce court awarded the marital residence to BELVA free and clear of any claim or interest of the DEBTOR, the contingency was determined against the DEBTOR so that the real estate is not property of the DEBTOR'S bankruptcy estate.  The TRUSTEE turns to her strong-arm powers in an effort to override the divorce court judgment. However, those hypothetical powers post-date the filing of the divorce case since the DEBTOR'S bankruptcy case was not filed until eight months after the divorce petition, so the *McEnery* holding does not help the TRUSTEE here.

## B.  Section 503(e) of the Illinois Marriage and Dissolution of Marriage Act.

Count I of the TRUSTEE'S Complaint is premised on the theory that a transfer to BELVA of the DEBTOR'S interest in the homestead occurred by operation of statute when the petition for dissolution of marriage was filed on October 4, 2012.  The TRUSTEE requests that the transfer be avoided and preserved for the benefit of the estate.  As explained below, no transfer occurred when the divorce petition was filed since BELVA was already a joint owner of the property.

The Illinois Marriage and Dissolution of Marriage Act is codified at 750 ILCS 5/101 *et. seq.* (the IMDMA).  Section 503, dealing with disposition of property, defines marital property, sets forth various factors the court should consider when dividing marital

7

property, and addresses the effect of a party's wrongful dissipation of marital property.[3]

Subsections (e) and (f) of section 503, as amended by Public Act 82-668, effective January 1, 1982, provided as follows:

> (e) Each spouse has a species of common ownership in the marital property which vests at the time dissolution proceedings are commenced and continues only during the pendency of the action. Any such interest in marital property shall not encumber that property so as to restrict its transfer, assignment or conveyance by the title holder unless such title holder is specifically enjoined from making such transfer, assignment or conveyance.
>
> (f) A transfer of marital property from one spouse to another in acknowledgment of their respective contributions to the accumulated marital estate, either by agreement or by order of court, is a division of the common ownership of marital property. Such a transfer is not a taxable event.

750 ILCS 5/503(e) and (f).[4] Although the curious phrase, "species of common ownership," seems perplexing at first glance, its provenance has been well documented in the Historical and Practice Notes to the IMDMA authored by Marshall J. Auerbach, Albert E. Jenner, Jr. and James H. Feldman.[5]

The Historical and Practice Notes for subsections (e) and (f) of section 503, which detail the origins and purpose of the phrase "species of common ownership," state as follows:

> Public Act 83-129, effective August 19, 1983, relettered former subsection (c) as subsection (e). Subsections (e) and (f) were originally added to section 503 by Public Act 82-668, effective January 1, 1982 and were intended to deal with the capital gains tax implications of a transfer of

---

[3]In this portion of the analysis, absent contrary indication, all statutory section references are to the IMDMA.

[4]Subsection (e) remains unchanged. Subsection (f) was subsequently deleted by Public Act 87-881, effective January 1, 1993.

[5]These Historical and Practice Notes first appeared in the Smith-Hurd Illinois Annotated Statutes (West Publishing 1980), Chapter 40 Domestic Relations. The Chapter 40 Notes were subsequently updated by the authors in periodic supplements. The excerpt quoted in this Opinion is taken from the supplement that appears in the 1992 Cumulative Annual Pocket Part to Chapter 40 of the annotated statutes.

marital property that would otherwise be taxable under *United States v. Davis*, 370 U.S. 65 (1962). In that case, the Court held that whether a transfer of property upon divorce is a taxable event depends upon the applicable rights conferred by state law on the non-title holding spouse. The Court found that since, under Delaware law, the transferee spouse's rights did not "even remotely reach the dignity of co-ownership," (*Id.* at 70), the property settlement could not be considered a division of property among co-owners; instead, it constituted a taxable transfer of property in exchange for the release of a legal obligation.

The Court in the *Davis* case left open the possibility that state property law might give rise to a form of co-ownership in a non-title holding spouse similar to that found in a community property state such that an exchange of property would not be a taxable event. Subsequently, two federal cases, *United States v. Collins*, 412 F.2d 211 (10th Cir. 1969), and *Imel v. United States*, 523 F.2d 853 (10th Cir. 1975), interpreted state equitable distribution statutes in Oklahoma and Colorado respectively, as creating a "species of common ownership." In each case the Court relied on an authoritative state Supreme Court interpretation of the relevant statute indicating that the property right vested upon commencement of the divorce proceedings. *See Collins v. Oklahoma Tax Commission*, 446 P.2d 290 (Okla. 1968); *In Re Questions Submitted by United States District Court for District of Colorado*, 184 Colo. 1, 517 P.2d 1331 (Colo. 1974). *See also* Rev.Rul. 74-447, 1974-2 C.B. 26 (citing *Collins* for the proposition that property may be co-owned under *Davis* where "state property law is found to be similar to community property law").

Subsections (e) and (f) then, as evidenced by the use of the term "species of common ownership" and the provision for vesting "at the time dissolution proceedings are commenced," were intended to track the interpretation of state law found in *Collins* and *Imel, supra*, thus producing the same tax consequences for transfers of marital property upon dissolution of marriage. In this respect the measure is similar to enactments in other states (e.g., Kansas, Missouri, North Carolina, Oregon and Minnesota) in response to *Davis*. No federal court has yet decided whether the measure creates a co-ownership interest sufficient to eliminate taxation upon the transfer of marital property.

Subsection (e) also provides that the "species of common ownership" provided therein will not restrict the title holding spouse from assigning or otherwise conveying the property unless the titleholder is specifically enjoined. Regarding injunctions, *see* § 501.

Under subsection (f), only those transfers of property "in acknowledgment of [the spouses'] respective contributions to the accumulated marital estate" are considered a division of property among co-owners and therefore non-taxable under *Davis*. A transfer not in acknowledgment of those contributions would therefore not meet the requirements of subsection (f).

Subsections (e) and (f) have been rendered largely superfluous by the enactment of the Tax Reform Act of 1984, P.L. 980369 (Subtitle B–Domestic Relations), effective July 18, 1984 (property transfer provisions). This Act repealed the *Davis* rule by providing for the nonrecognition of gain or loss on transfers of property during marriage and incident to dissolution of marriage. The property is treated as acquired by the transferee by gift, and the transferee receives the property at the transferor's basis. The provisions of this Act apply to transfers after July 18, 1984 under instruments which go into effect after that date. In addition, the provisions apply to transfers after July 18, 1984 under instruments in effect on or before that date if both parties elect to have the new law applied, and to transfers after December 31, 1983 and before July 18, 1984 if both parties elect to have the new law apply. This enactment also changes the tax treatment of maintenance and child support. *See* Supplement to Historical and Practice Note to § 504, *infra.*

In *Davis*, the Supreme Court held that state law determines whether a spouse without a record ownership interest who receives property as part of a divorce, will be considered to have had, for tax purposes, a vested ownership interest in the asset that predated the property distribution order. If so, the transfer is a nontaxable event under the tax code rule that excludes a division of property between co-owners. *Laird v. United States,* 16 Cl.Ct. 441 (1989). The taxation issue arose in *Davis* because the property at issue was, prior to the divorce, solely owned by the transferor spouse. If the property had been titled in both spouses' names as co-owners, there would have been no issue due to the tax code exclusion that already applied to intra-marital transfers of jointly owned assets.

The tax problem was a common one for Illinois residents since Illinois has never adopted the concept of community property, instead permitting married persons to own property separately with the right to dispose of it in any fashion that the property owning spouse may choose.[6] The Illinois Supreme Court had made it clear that the term "marital

---

[6]The second sentence of section 503(e), stating that the common ownership interest arising upon the filing of a divorce petition does not affect the record owner's ability to transfer such assets, appears to have been intended to clarify that since the right of transfer was unimpaired, there should be no doubt that Illinois would remain a non-community

property" used in the IMDMA is a "nomenclature devised to realize an equitable distribution of property upon termination of the marriage," which is not subject to adjudication until the marriage is dissolved. *Kujawinski v. Kujawinski,* 71 Ill.2d 563, 573, 376 N.E.2d 1382 (1978). *See, also, In re Marriage of Olson,* 96 Ill.2d 432, 442, 451 N.E.2d 825 (1983)(under *Kujawinsk,* and prior to the 1982 amendments to the IMDMA, the operation of the term "marital property" is not triggered until the judgment of dissolution is entered). The Illinois Supreme Court later recognized that commentators in the wake of *Kujawinski* were of the opinion that a taxable event occurs when *separately owned* property is apportioned on dissolution of a marriage in Illinois, a result that does not occur in states in which property acquired during marriage is deemed to be held in common ownership. *Hoffman v. Hoffman,* 94 Ill.2d 205, 220, 446 N.E.2d 499 (1983). So the remedial effect of section 503(e) was to create a common ownership interest in separately owned assets that vested at the time the petition for dissolution was filed, thereby creating a prior co-ownership interest and thus fixing, for tax purposes, the *Kujawinski* problem.

The foregoing supports the conclusion that the legislative purpose behind the 1982 addition of subsections (e) and (f) to section 503 of the IMDMA was to enable divorce related property transfers of separately owned property to be treated as nontaxable events by the IRS, while preserving Illinois' status as a non-community property jurisdiction.[7] It follows that the vesting of a "species of common ownership" upon commencement of a dissolution action was only intended to apply to separately owned property. Another

---

property state.

[7]The 1977 adoption of section 503 of the IMDMA had the more general remedial purpose of replacing the title approach to real property distribution with a "common enterprise theory of marriage and a broad grant to trial courts of discretion to reach a just distribution of assets accumulated during the marriage." *Hofmann v. Hofmann,* 94 Ill.2d at 222.

Illinois bankruptcy court has previously adopted this interpretation of section 503(e). *In re Kimmell,* 480 B.R. 876, 887 (Bankr.N.D.Ill. 2012)(upon the filing of the petition for dissolution of marriage, wife obtained a "species of common ownership" in all property that was previously husband's sole property to the extent it constituted "marital property").

By incorporating into the IMDMA the unusual phrase "species of common ownership," lifted verbatim out of the *Collins* and *Imel* decisions, with its special-purpose meaning specific to the IRS, the Illinois legislature created a joint ownership interest in separately owned property, vesting upon commencement of the divorce proceeding, to enable marital property divisions to be non-taxable events. This limited purpose indicates that the concept of "species of common ownership" can have no application to property that, pre-divorce, is already titled in both spouses as joint tenants. BELVA'S joint tenancy ownership interest, of record since 1987, was not altered when she filed the divorce petition. She received no transfer of any further interest in the marital real estate by operation of section 503(e), limited in its application to separately owned property.

## C.  The Illinois *lis pendens* statute.

The TRUSTEE contends that BELVA'S failure to have recorded a *lis pendens* notice adversely affects her ability to claim full ownership of the former marital residence free and clear of the interest of the DEBTOR and, hence, his creditors. The Court disagrees.

The TRUSTEE correctly contends that the doctrine of *lis pendens,* Latin for pending suit, applies to divorce actions. Rejecting third-party creditor arguments that a divorce action does not directly involve real estate and so should not be subject to the *lis pendens*

doctrine, Illinois courts have held that a dissolution of marriage proceeding is an action seeking equitable relief, affecting or involving real property for purposes of 735 ILCS 5/2-1901, and thus falls within the scope of the *lis pendens* statute. *Voga v. Voga,* 376 Ill.App.3d 1075, 1081, 878 N.E.2d 800 (Ill.App. 2 Dist. 2007); *First Midwest v. Pogge,* 293 Ill.App.3d 359, 364, 687 N.E.2d 1195 (Ill.App. 4 Dist. 1997). So a party to a divorce who records a *lis pendens* notice gains priority over a subsequent transferee or mortgagee of the other spouse, even where the first party has no record title interest in the real estate. The question before this Court, however, concerns a spouse who does not record a *lis pendens* notice but who does have a preexisting joint ownership interest of record.

The *lis pendens* doctrine developed as a common law exception to the general rule of law that one not a party to a suit is not affected by the judgment. *Davidson v. Dingeldine,* 295 Ill. 367, 371-72, 129 N.E. 79 (1920). Under the *lis pendens* doctrine, as developed at common law and as originally codified by Illinois statute in 1917, one who purchased or otherwise acquired an interest in real estate involved in litigation, took such interest subject to the outcome of the litigation as if he had been a party thereto. *Admiral Builders Corp. v. Robert Hall Village,* 101 Ill.App.3d 132, 135-36, 427 N.E.2d 1032 (Ill.App. 1 Dist. 1981). At common law, the mere filing of a complaint involving real estate served as constructive notice to any subsequent purchaser that the property was subject to pending litigation. *Id.* at 136.

The doctrine developed as a matter of public policy, in order to address the concern that a defendant to a lawsuit involving real estate could, by transferring title, deprive the plaintiff of a remedy and frustrate the court's power to give effect to its judgment. By making the judgment binding on subsequent transferees, the doctrine, remedial in nature,

13

accorded finality to the pending suit, and was considered necessary as a matter of fairness to the plaintiff. *Norris v. Ile,* 152 Ill. 190, 199, 38 N.E. 762 (1894).

The 1917 statute codified the existing common law *lis pendens* doctrine, providing that every suit in equity affecting or involving real property "shall, from the time of the filing of the bill of complaint or petition, be constructive notice to every person subsequently acquiring an interest in or a lien on the property affected thereby." *Moore v. Zelic,* 338 Ill. 583, 587-88, 170 N.E. 664 (1930). In 1963, the Illinois legislature amended the 1917 statute to provide that a litigant's recording of a notice of the suit (a *lis pendens* notice) "shall be . . . constructive notice" to every subsequent purchaser. 735 ILCS 5/2-1901. The statute, however, does not create an obligation to record a *lis pendens* notice. *Admiral Builders Corp.,* 101 Ill.App.3d at 137; *Radovanov v. Land Title Co. of America, Inc.,* 189 Ill.App.3d 433, 439, 545 N.E.2d 351 (Ill.App. 1 Dist. 1989). Neither does the statute purport to make recording a *lis pendens* notice the exclusive means of providing constructive notice, and no Illinois court has held that it is. Rather, the statute leaves unaffected existing law pertaining to other forms of notice.[8] *See Bankers Trust Co. of California N.A. v. Beneficial Illinois Inc.,* 92 F.3d 1187, n.4 (7th Cir. 1996)(recognizing that the Illinois legislature has not enacted any legislation eliminating constructive notice of unrecorded ownership interests arising out of divorce proceedings); *E&E Hauling, Inc. v. DuPage County,* 77 Ill.App.3d 1017, 1023-25, 396 N.E.2d 1260 (Ill.App. 2 Dist. 1979)(noting that the *lis pendens* statute adopted in Illinois, unlike certain other states, is focused on protecting a litigant from third persons who might acquire an interest in real estate during the pendency of the litigation, thereby

---

[8] In light of the long-standing policy behind the *lis pendens* doctrine of preventing a property owner who is a defendant in a lawsuit from end-running the suit by transferring title, it would be contradictory not to charge the purchaser with customary forms of notice. The plaintiff's failure to take advantage of the protective purpose of the *lis pendens* statute, should not be interpreted as a license for the purchaser to abet the defendant in gaming the judicial process.

precluding the court from granting the requested relief, and nowhere mentions the possible

alternative purpose of giving notice to purchasers).

BELVA, not having recorded a *lis pendens* notice before the DEBTOR filed his

petition, is not asserting the benefit that the *lis pendens* doctrine codified in section 2-1901

provides to a litigant, so the statute is not at issue here.   Neither is the instant case a

situation where the acquiring spouse had no prior interest of record, in which event a *lis*

*pendens* notice would have been the first and only document in the chain of title to provide

notice of her contingent interest.   As discussed more fully below, the 1987 deed, showing

BELVA as a joint owner and spouse of her co-owner, provides constructive notice of that

interest to any purchaser of the DEBTOR'S interest.[9]

**D.  Record Notice**.

The TRUSTEE is seeking to use the power afforded by Bankruptcy Code section

544(a)(3) to prevent BELVA from realizing the benefit of the divorce court judgment

awarding her title to the marital homestead free and clear of the interest of the DEBTOR.

The TRUSTEE may succeed only if a purchaser taking title to the DEBTOR'S half interest

by a deed signed by the DEBTOR on the petition date would, under Illinois law, have prior

and superior title, notwithstanding that the divorce proceeding and the issue of division

of marital property were pending at the time of the hypothetical conveyance.   If such a

hypothetical purchaser would have taken subject to BELVA'S marital property rights, then

the TRUSTEE'S claim fails.   The issue turns on constructive notice.

Where real property is at issue, section 544(a)(3) confers upon the trustee the rights

---

[9]As far as this Court can tell, the applicability of the *lis pendens* statute where a party to a divorce proceeding already
holds a joint ownership interest of record has not been addressed by any Illinois court.

of a hypothetical purchaser of the debtor's interest, as of the petition date.  The extent of

a trustee's rights as such a purchaser, vis-a-vis third parties, is governed entirely by the

substantive law of the state in which the property in question is located.  *In re Bridge,* 18

F.3d 195, 200 (3d Cir. 1994).  A trustee's strong-arm powers rise and fall according to state

law.  Section 544(a)(3) does not transform the trustee into a super-priority creditor or grant

the trustee powers not available to an actual purchaser under state law.  *Id.*  State law

governs who may attain the status of a *bona fide* purchaser and what constitutes

constructive notice sufficient to defeat a trustee's section 544(a)(3) power.  *In re Crane,* 742

F.3d 702, 706 (7th Cir. 2013).  While a trustee cannot be charged with actual knowledge, a

trustee is chargeable with constructive notice.  *Id.*

     Under Illinois law, a *bona fide* purchaser is a person who takes title to real property

in good faith, for value and without notice of outstanding rights or interests of others.  By

establishing his status as a *bona fide* purchaser, the transferee takes such title free of any

interests of third persons, except such interests of which he has notice.  *Daniels v. Anderson,*

162 Ill.2d 47, 57, 642 N.E.2d 128 (1994).  Notice may be actual or constructive and

contemplates the existence of circumstances or facts either known to a prospective

purchaser or of which he is chargeable with knowledge which imposes upon such

purchaser the duty of inquiry.  *Harris v. Adame,* --- N.E.3d ----, 2015 IL App (1st) 123306,

2015 WL 6874523.  Constructive notice includes both record notice and inquiry notice.

*Crane,* 742 F.3d at 706; *U.S. Bank Nat. Ass'n v. Villasenor,* 2012 IL App (1st) 120061, 979

N.E.2d 451, 465.

     Record notice imputes to a purchaser not only knowledge that could be gained from

an examination of the land title records in the office of the recorder of deeds, but also of the probate, circuit and county court records for the county in which the land is situated, which is the rule adopted long ago by the Illinois Supreme Court. *Clark v. Leavitt,* 335 Ill. 184, 191, 166 N.E. 538 (1929); *Eckland v. Jankowski,* 407 Ill. 263, 267, 95 N.E.2d 342 (1950); *Petta v. Host,* 1 Ill.2d 293, 303, 115 N.E.2d 881 (1953). The Seventh Circuit Court of Appeals recognizes the rule. *Crane,* 742 F.3d at 706-07; *Bankers Trust Co. of California N.A.,* 92 F.3d 1187. The rule has recently been cited by an Illinois appellate court, *see Hachem v. Chicago Title Ins. Co.,* 2015 IL App (1st) 143188, at *5, --- N.E.3d ----, but the TRUSTEE disputes its continued effectiveness.

Relying on *In re Kelly,* 1989 WL 141393 (Bankr.N.D.Ill. 1989), the TRUSTEE argues that the 1963 amendment to the *lis pendens* statue abrogated the supreme court cases construing the earlier version of the statute. *Kelly,* a bankruptcy court opinion, supports that argument.[10] The argument is contradicted, however, by the continued reliance on the prior rule of *Eckland v. Jankowski,* by the Illinois court of appeals in *Hachem,* and by the Seventh Circuit Court of Appeals in *Crane* and *Bankers Trust, supra.* The Illinois Supreme Court has not construed the effect of the 1963 amendment to the *lis pendens* statute. This Court will follow the lead of *Hachem, Crane* and *Bankers Trust.* A hypothetical purchaser taking a deed from the DEBTOR is thus deemed to have constructive notice of the then-pending divorce action, and so cannot take free of BELVA'S marital property interest.

---

[10] *Kelly's lis pendens* statutory analysis has never been cited or relied upon by another court in a published opinion. To the contrary, other bankruptcy courts, both before and after *Kelly,* have continued to cite the prior rule. *In re Polo Builders, Inc.,* 433 B.R. 700, 707-08 (Bankr.N.D.Ill. 2010)(Goldgar, J.); *In re Richardson,* 75 B.R. 601, 605 (Bankr.C.D.Ill. 1987)(Altenberger, J.); *In re Ehrlich,* 59 B.R. 646, 650 (Bankr.N.D.Ill. 1986)(Schwartz, J.). *See, also, Szyszko v. Szyszko,* 2001 WL 766905 (N.D.Ill. 2001)(where a divorce proceeding predates the bankruptcy filing, Illinois law does not require a spouse to establish a separate recorded interest to protect her marital property interest in the marital homestead against the rights of a hypothetical purchaser under section 544(a)(3)).

Even if the TRUSTEE'S argument about the amendment to the *lis pendens* statute were to be accepted, she is still chargeable with inquiry notice of BELVA'S interest.

### E. Inquiry Notice.

In addition to record notice, constructive notice includes inquiry notice. The fundamental policy underlying the principle of inquiry notice is that one acquiring an interest in real estate from another, is charged with a duty to exercise reasonable care and prudence concerning not only the nature and extent of the transferor's interest, but also the existence, nature and extent of the interest of others in the property. When facts or circumstances are present that create doubt, raise suspicions, or engender uncertainty about the true state of title to the real estate, the transferee is not permitted to turn a blind eye but is, instead, required to investigate further. If he fails to make further inquiry, he will nevertheless be charged with notice of additional facts that may have been discovered by diligent inquiry. *Bryant v. Lakeside Galleries, Inc.,* 402 Ill. 466, 478, 84 N.E.2d 412 (1949); *Stump v. Swanson Development Co., LLC,* 2014 IL App (3d) 110784, 5 N.E.3d 279, 300; *Application of Cook County Collector,* 228 Ill.App.3d 719, 734, 593 N.E.2d 538 (Ill.App. 1 Dist. 1991). Such a purchaser is placed on inquiry notice when facts revealed in the title search process would cause a reasonable person to think twice about completing the transaction. *Stump,* 5 N.E.3d at 300. When someone other than the transferor is in possession of the property, the transferee is bound to inquire of the person in possession by what tenure he holds and what interest he claims in the premises. *Burnex Oil Co. v. Floyd,* 106 Ill.App.2d 16, 22, 245 N.E.2d 539 (Ill.App. 1 Dist. 1969), *citing Carnes v. Whitfield,* 352 Ill. 384, 185 N.E. 819 (1933).

The facts that give rise to inquiry notice include the 1987 deed that, on its face, identifies BELVA as a joint tenant, identifies BELVA and the DEBTOR as husband and wife, and the fact that BELVA has been in continuous physical possession of the property. In addition, it is necessary to consider the circumstances surrounding the hypothetical transfer. Whatever is notice enough to excite the attention of a prudent person and put him on his guard is notice of everything to which such inquiry might have led; every unusual circumstance is a ground of suspicion and demands investigation. *Smith v. Grubb,* 402 Ill. 451, 464-65, 84 N.E.2d 421 (1949).

The fact that BELVA is a joint tenant of record, is the spouse of the DEBTOR who is the hypothetical transferor, and is in actual physical possession and occupancy of the real estate is easily enough to trigger a duty of further inquiry. It is suspicious by itself that only one of two joint tenants to residential real estate would be attempting to convey title. The first question any prudent buyer (and a title insurance company) would ask is what is the status of the co-owner? Adding the additional facts that the co-owner is the transferor's spouse and lives in the house, would surely set alarm bells ringing in the mind of any prudent buyer.

It must be remembered that the hypothetical purchaser is obligated to exercise reasonable care and prudence as it relates not only to the DEBTOR'S title but also with respect to the nature and extent of BELVA'S interest. The TRUSTEE argues that because BELVA'S joint tenancy interest is a matter of record, and her occupancy is not inconsistent with that patent interest, that the circumstances are not suspicious enough to trigger a duty of further inquiry. The Court disagrees.

19

A comparison may be made with a case in which the occupant spouse holds no record title interest. In that event, the TRUSTEE concedes that any potential purchaser would have a duty, based on her possession alone, to make inquiry of her as to the nature and extent of her interest. If a divorce action was pending, the purchaser would be deemed to have constructive notice of it since the occupant spouse would surely disclose it in response to a verbal inquiry. In the case at bar, the TRUSTEE posits a scenario where BELVA would be worse off because she has a record ownership interest, which the TRUSTEE argues relieves the buyer from making any inquiry of her. That scenario cannot be accepted in light of the hypothetical purchaser's obligation to make a reasonably diligent inquiry to ascertain the true nature and extent of the interest of persons other than his transferor, particularly persons that occupy the property as their residence.

Any purchaser is on notice of the fact that BELVA, who is alive and residing in the house, is a co-owner and the spouse of the transferor. These circumstances raise reasonable concerns that trigger a duty of inquiry. The hypothetical purchaser is therefore on inquiry notice of the fact that a divorce proceeding is pending, since BELVA would have disclosed that in response to an inquiry.[11]

## CONCLUSION

Count I of the TRUSTEE'S complaint seeks avoidance and preservation of any transfer of the marital real estate effected by operation of section 503(e) of the IMDMA. As

---

[11]Whether a title insurance company conducting commercially reasonable practices upon retention by a hypothetical purchaser of the DEBTOR'S interest (but not BELVA'S interest) would have searched for and discovered the divorce case filing is not addressed by the parties. It is difficult to see how such a hypothetical purchaser could be *bona fide* without obtaining title insurance. It may well be the customary practice of title insurance companies to search the circuit court records for divorce cases involving the seller or a co-owner. *Radovanov v. Land Title Co. of America, Inc.*, 189 Ill.App.3d at 439 (finding that title insurance companies customarily search court records for divorce cases and other types of litigation affecting title).

determined in this Opinion, no transfer was effected by section 503(e).  Accordingly, BELVA is entitled to judgment on Count I.

Count II of the complaint seeks authority to sell the marital real estate pursuant to Bankruptcy Code section 363(h), free and clear of the ownership interest of BELVA, in order to liquidate the DEBTOR'S half interest for the benefit of his creditors.  The divorce court issued a final judgment awarding the real estate to BELVA free and clear of any interest of the DEBTOR, so that the property is no longer property of the DEBTOR'S bankruptcy estate.  The Court having determined that the rights accorded under section 544 are not effective to override the divorce court's judgment awarding the real estate to BELVA free and clear of any interest of the DEBTOR, the real estate is not subject to sale under section 363(h).  BELVA is entitled to judgment on Count II.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate Order will be entered.

### ###